JOHN J. JORDAN, ESQ. (State Bar No. 175678)
601 Montgomery Street, Suite 850
San Francisco, CA 94111
Tel: (415) 391-4814
Fax: (415) 391-4308
jjordanesq@aol.com

Counsel for Defendant
JARAY ANTHONY WASHINGTON

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>JARAY ANTHONY WASHINGTON,<br>Defendant. | Nos. CR-20-0332-SI<br>CR-24-0467-SI<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Date: October 30, 2026<br>Time: 11:00 a.m.<br>Hon. SUSAN ILLSTON |

## I. INTRODUCTION

The defendant, JARAY ANTHONY WASHINGTON, through counsel of record, John J. Jordan, appears before this Court following his entry of guilty pleas to Counts 1 through 8 and Count 10, in the 2024 indictment. Count 9 is expected to be dismissed at sentencing. The defendant also appears for the Form 12 violation of his supervised release in the 2020 indictment.

Mr. Washington asks that the Court grant a downward variance to 84 months in the 2024 indictment, with concurrent time Form 12 violation.

While a prison sentence is called for due to the severity of these offenses, there are substantial mitigating factors under 18 U.S.C. § 3553(a). These factors include his extremely difficult past, and his unresolved mental health and drug addiction issues, as described in the PSR and the attached report of defense expert Dr. Amanda Gregory attached as Exhibit A.

The life experience of Mr. Washington is, without exaggeration, shocking. His father Raymond Washington was murdered in 1996, when the defendant was 14 years old. PSR ¶ 116. His mother Jaime Cacho, a long time drug addict, was shot in 2007, and four uncles, Robert Shepard, Dwight Welch, Michael Washington, and Chris Washington, have also been murdered. PSR ¶ 116. Numerous friends were also lost to gun violence. *Id.*

The defendant, in counsel's opinion, was further damaged by the juvenile authorities who presumably were supposed to help him. At the age of 15, the defendant was sent to the Arizona Boys Ranch's residential school in Oracle, Arizona. There Mr. Washington and the other juvenile residents were physically abused, to the point where another boy there named Nicholaus Contreraz died. PSR ¶ 117.

Then, after his release in the 2020 case, the defendant lost his Aunt Brenda Washington and his grandmother, Katherine Washington, who were his primary family support.

These factors all support the defendant's recommendation.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Washington is before this Court after entering a plea to the Hobbes Act Robberies charged in Counts 1 through 8, and the charge of Felon in Possession of a Firearm in Count 10.

The PSR details the facts of the offense. In summary, the defendant committed a series of armed robberies, and when arrested, was in possession of the firearm used in the robberies. PSR ¶¶ 5-29.

On December 19, 2025, the defendant entered a guilty plea to eight counts of Hobbes Act Robberies Affecting Interstate Commerce, in violation of 18 U.S.C. § 1951(a) (counts 1-8); and one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) (count 10).

## III. GUIDELINES CALCULATION AND PROBATION'S RECOMMENDATION

There are outstanding disputes with the PSR by both the defendant and the government.

The parties reached a plea agreement pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B). The defendant and the Government agreed to the following Sentencing Guidelines calculations:

1. Counts One through Four, Base Offense Level 20 pursuant to U.S.S.G. §2B3.1(a), and a six-level enhancement for the use of a firearm pursuant to U.S.S.G. §2B3.1(b)(2)(B), for an Adjusted Offense Level of 26 per count;

2. Counts Five through Eight, Base Offense Level 20 pursuant to U.S.S.G. §2B3.1(a), a six-level enhancement for the use of a firearm pursuant to U.S.S.G. §2B3.1(b)(2)(B), and a two-level enhancement for physical restraint pursuant to U.S.S.G. §2B3.1(b)(4)(B), for an Adjusted Offense Level of 28 per count;

3. Count Ten (the firearm), Base Offense Level 14 pursuant to U.S.S.G. §2K2.1(a)(6), and a four-level enhancement for use of a firearm in connection with another felony offense pursuant to U.S.S.G. §2K2.1(b)(7)(B)(1), for an Adjusted Offense Level of 18.

4. The parties agreed an additional five levels are added for the number of units pursuant to U.S.S.G. §3D1.3, and three levels are subtracted for acceptance of responsibility pursuant to U.S.S.G. §3E1.1, for a Total Offense Level of 30. The parties did not reach an agreement as to criminal history.

The Probation Officer submitted in the PSR that the two-level enhancement for physical restraint only applies to Count Six, and does not apply to Counts Five, Seven, and Eight; that a two-level enhancement for reckless endangerment during flight applies, pursuant to U.S.S.G. §3C1.2; and Count Ten (the firearm charge) can be grouped with one of the robbery counts under U.S.S.G. §3D1.2(c). These calculations also resulted in a Total Offense Level of 30. PSR ¶¶ 33-91.

The government and the defendant both object to the inclusion of a two-level enhancement for reckless endangerment during flight pursuant to U.S.S.G. §3C1.2, consistent with the parties' plea agreement.

The government objects to the exclusion of two-level enhancements for physical restraint, pursuant to U.S.S.G. §2B3.1(b)(4)(B), in the count groups pertaining to Counts Five, Seven, and Eight.

The defendant also objects to criminal history calculations. The PSR calculates a criminal history VI, based on a criminal history score of 14. PSR ¶ 104.

However, the scoring of three criminal history points to the 2003 conviction in PSR ¶ 96, and the scoring of three criminal history points to the 2007 conviction in PSR ¶ 98, are untimely and outside of the 15- year limit in U.S.S.G. §§4A1.1(a) and 4A1.2(e). The instant offense began on January 14, 2024, and the sentencing dates for the 2003 conviction and the 2007 conviction fall outside of the 15-year window. Regarding the 2003 conviction, the pre-sentence report indicates the defendant was returned to prison for 300 days on December 21, 2008, but it is not clear what time was served and when his actual release date was. Regarding the 2007 conviction, the PSR indicates the defendant was returned to prison on January 25, 2011, but again it is not clear if the defendant was incarcerated solely on a new term (for the 2008 robbery conviction in paragraph 99), or if he was also incarcerated on the 2007 conviction. Given that there is no proof that the defendant was incarcerated for either of these convictions during the 15-year period, counsel objects to these convictions being scored as criminal history points.

Exclusion of these points would lower the Criminal History points to 8, resulting in a Criminal History Category IV.

## IV. DEFENDANT’S ARGUMENT AND SENTENCING RECOMMENDATION

On the 2024 Indictment, the defendant moves this Court to grant a downward variance and sentence him to 84 months incarceration. While this is below the guideline range, this Court can find support for a variance after application of the mitigating factors contained in 18 U.S.C. § 3553(a).

### 1. Applicable Law

The Court is familiar that post-*Booker*, a district court is "not mandated to sentence within an applicable Guideline range because the Sentencing Guidelines are advisory--not mandatory." *United States v. Mix*, 450 F.3d 375 (9th Cir. 2006), citing *United States v. Cantrell*, 433 F.3d 1269, 1279-81 (9th Cir. 2006) and *United States v. Booker*, 543 U.S. 220, 259-60

(2005). District courts must first consult the Sentencing Guidelines and take them into account when sentencing. *United States v. Cantrell*, 433 F.3d at 1279, quoting *Booker*, 543 U.S. at 264. The district court then applies the factors enumerated in 18 U.S.C. § 3553(a) in its sentencing decision. *United States v. Cantrell*, 433 F.3d at 1279-80; see also *United States v. Ameline*, 409 F.3d 1073, 1085-86 (9th Cir. 2005) (en banc).

The applicable factors here include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(1)-(2).

In addition, the Court should address the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

The Court has the responsibility to "impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing..." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (internal quotation marks and citation omitted); see also 18 U.S.C. § 3553(a).

**2. The Defendant Requests a Sentence of 84 Months**

**a. The nature and circumstances of the offense and the history and characteristics of the defendant**

The defendant requests that the Court grant a downward variance after a review of the factors set forth in 18 U.S.C. § 3553(a), and sentence the defendant to 84 months, to be followed by supervised release with a condition that he receive dual diagnosis treatment in a residential program.

Mr. Washington acknowledges that the charges here are extremely serious, particularly as

he displayed a loaded firearm, causing severe distress to the robbery victims. Further, the defendant acknowledges that he did these robberies after being convicted for multiple prior felonies and misdemeanors, including the 2020 case before this Court.

However, there are also mitigating circumstances in this case relating to the nature and circumstances of the offense. In particular, the defendant suffers from serious mental health and drug abuse issues, following an extremely difficult life to date.

As the PSR notes:

> Mr. Washington had a difficult upbringing characterized by instability, trauma, and lack of proper guidance. He dropped out of school as a teenager, but he later received his GED in prison. He has limited prior work experience. Mr. Washington struggles with substance abuse, particularly methamphetamine, cocaine, fentanyl, alcohol, ecstasy, and hallucinogenic mushrooms. While on federal supervised release, he was receiving drug treatment, but he relapsed after the deaths of his grandmother and aunt. He then spiraled into daily drug usage, which he believes contributed to the instant offense conduct. Mr. Washington also suffers from PTSD, depression, anxiety, asthma, sciatic nerve pain, and a tumor in his foot.

Sent. Recommendation. Page 2.

Mr. Washington's mother was a drug addict and his father was in and out of prison during his childhood, until he was murdered. He experienced the deaths of numerous family members to gun violence, including four uncles. His mother was also shot but survived. He also suffered a traumatic incident in which he witnessed a boy's death due to staff negligence while at the Arizona Boys Ranch, where he was placed after a juvenile arrest.

These events took an obvious toll on the defendant, who self-medicated, with a long history of using alcohol, marijuana, cocaine, methamphetamine, heroin, hallucinogens, inhalants, and prescription drugs. PSR ¶ 128.

Mr. Washington explained to the probation officer "what was happening in his life when he committed the instant offense. He advised that his aunt and his grandmother, both of whom were integral parts of his life, passed away within four months of each other. Mr. Washington's mental health subsequently worsened, which then led to a relapse on drugs, and everything spiraled from there. PSR ¶ 121.

Since his arrest for the instant offense, numerous other family members have passed away, including his 13-year-old nephew, who was killed in a mass shooting at a party in Stockton, California in October 2025.

Moreover, the defendant has suffered from recurring foot tumors following surgery in 2011, and recently had a new, benign tumor removed. PSR ¶ 125.

In addition, just recently on October 16, 2026, he was assaulted by two other inmates at Elmwood Jail, suffering a puncture behind his left ear and facial scratches.

**b. The defendant's mental health**

The defendant's mental health supports a downward variance

Dr. Gregory, a court-appointed forensic psychologist, has prepared a thorough report for the Court. See Exhibit A, filed separately under seal.

Dr. Gregory reports that: "The current psychological assessment results, including consideration of current and prior psychological testing, interviews, and medical record review, are consistent with a diagnosis of Schizoaffective Disorder, Depressive Type currently in partial remission due to mental health treatment (medication and counseling). Mr. Washington has a long history of depressive episodes dating back to his teenage years. Childhood adversity and trauma as well as numerous family and friend losses to community violence, medical issues, and overdose have contributed to his mood instability including symptoms of depressed mood, hopelessness, anhedonia, self-criticism, and irritability." Report at page 17.

Dr. Gregory also noted that "Mr. Washington has a long history of severe substance abuse issues, most notably methamphetamine, opiates, and alcohol prior to his current detention. On numerous occasions in the past, he has turned to substance abuse when confronted with losses and other significant life stressors or traumas, including prior to the incidents that resulted in his current charges. His substance misuse clearly exacerbates his symptoms of depression and psychosis." *Id.*

The defendant does appear to understand that he has serious issues, that he needs

treatment, and that these issues are causing him very serious problems. During the pre-sentence interview, the defendant expressed regret for his actions. PSR ¶ 32. The probation officer noted that the "defendant advised the college psychology courses he has taken in custody have helped him understand how his actions harmed others, and that even though some of his actions stemmed from his own traumas, that does not give him the right to inflict harm on others. The defendant advised he is reframing the way he thinks, and he wants to break his cycle of engaging in criminal activity." PSR ¶ 32.

Dr. Gregory also noted that more recently, the defendant "was reporting a renewed sense of hope for the future at the time of the current evaluation secondary to educational opportunities, engaging in treatment, and being more accountable for his behavior rather than externalizing blame (lack of accountability for his behavior was a notable feature of the evaluation in 2025)." Report at page 17. Dr. Gregory related that Mr. Washington was more accountable for the impact of his behavior and did not attempt to blame his conduct solely on drugs and mental illness. He appeared to have a better understanding about how his behavior had impacted the victims and his loved ones. When asked about this directly, he said, ""A five year old could tell you that's wrong. My actions placed a strain on these people's (the victims) lives. Who am I to traumatize people. Just because I come from a background of trauma and drugs and hurt, who am I to affect others? I have great remorse and I want to apologize to the victims." He said he feels "hurt off the fact of what I did to these people. I needed to full-fledged recalibrate. I was in denial before" about the impact his behavior had on the victims." Report at page 13.

**3. The recommended 84 month sentence balances the sentencing factors.**

The recommended 84 month sentence reflects the seriousness of the offense and promotes respect for the law. It is a just punishment for the offense, and will keep the defendant in prison for a substantial time.

The defense hopes that while incarcerated, the defendant receives needed vocational training, medical care, and mental health counseling.

Dr. Gregory noted that "Mr. Washington will need substance abuse and relapse prevention treatment, including learning more adaptive coping skills, to help him fulfill his goal of staying sober in the future. Mr. Washington also exhibits some antisocial personality traits, including a history of repeated illegal behaviors dating back to adolescence, difficulty feeling remorse and taking accountability for his behavior, and impulsivity. As previously noted, he was better able to express accountability and empathy on the current evaluation than the prior evaluation in 2025. Accountability will need to be a focus of Mr. Washington's rehabilitation going forward in addition to mental health and substance misuse treatment." Report at page 18.

The defendant asks that the doctor's report be forward to the BOP, for use in determining necessary treatment for the defendant.

**4. The Defendant Requests Concurrent Time for the Form 12 Violation**

The defendant asks this Court to impose concurrent sentences for both the 2020 Form 12 supervised release violation and the 2024 conviction. This Court has discretion to impose a concurrent sentence for the Form 12 violation.

The language of the applicable U.S.S.G. guideline, U.S.S.G. § 7B1.3(f), states that:

(f) Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.

However, despite its language, U.S.S.G. § 7B1.3(f) is not mandatory, but instead only a policy statement recommendation.

Even before the Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005), that the entire Sentencing Guidelines are advisory and not mandatory, the Ninth Circuit had already recognized that U.S.S.G. § 7B1.3(f) is an advisory policy statement that is not mandatory. See *United States v. Sanchez-Bonilla*, No. 94-10397, 1995 U.S. App. LEXIS 3632 (9th Cir. Feb. 22, 1995) (unpublished).

In *Sanchez-Bonilla*, the Ninth Circuit held that U.S.S.G. § 7B1.3(f) is not binding, stating that the "Sentencing Commission has issued a policy statement recommending that sentences imposed upon revocation of supervised release run consecutively." *Id*., citing U.S.S.G. § 7B1.3(f) and comment (n.5) (1994); and *United States v. Schram*, 9 F.3d 741, 742-43 (9th Cir.), *cert. denied*, 510 U.S. 982 (1993). The court then stated that "This policy statement is advisory, not mandatory." *Id*., citing *United States v. Forrester*, 19 F.3d 482, 484 (9th Cir. 1994). The court noted that "Despite Guidelines policies regarding consecutive or concurrent sentences, a sentencing court retains the discretion under 18 U.S.C. § 3584(a) to impose a concurrent or consecutive sentence." *Id*., citing *United States v. Lail*, 963 F.2d 263, 264 (9th Cir. 1992); *United States v. Wills*, 881 F.2d 823, 826 (9th Cir. 1989).

The defendant urges the Court to exercise its discretion in this case. While the defendant is absolutely responsible for his actions, an additional term of incarceration is unwarranted here. In light of mitigating factors listed above, the defendant asks for a concurrent sentence on the Form 12 violation.

**CONCLUSION**

The defendant asks this Court to sentence him to a total sentence of 84 months incarceration on both cases, followed by 3 years supervised release with appropriate conditions, and a $900.00 special assessment. The defendant suggests that the Court consider imposing a condition that the defendant enter a dual diagnosis program upon his release from prison, as a condition of supervised release, rather than impose the longer prison terms recommended by Probation and the U.S. Attorney. The defense also asks for a recommendation that the defendant be placed at a facility close to his family in the Bay Area, with mental health treatment and participation in the RDAP drug program.

DATED: October 23, 2026 Respectfully submitted,

*<u>/s/ John J. Jordan</u>*
JOHN J. JORDAN