CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

JONAH P. ROSS (CABN 305076)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3701
jonah.ross@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JARAY WASHINGTON,<br><br>Defendant. | NO. 3:24-CR-00467 SI<br>NO. 3:20-CR-00332 SI<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: October 30, 2026<br>Time: 11:00 a.m.<br><br>Judge: Hon. Susan Illston |

## INTRODUCTION

Defendant Jaray Washington has pleaded guilty to committing eight armed Hobbs Act robberies while on federal supervised release following his 2022 conviction for possessing a firearm as a felon. Washington committed most of these robberies on his own, but for two of them, he enlisted the assistance of a much younger accomplice, who is now serving federal prison time following his conviction. As described in the Presentence Investigation Report, there is strong evidence of Washington's participation in three additional armed robberies at gas stations in August of 2023, bringing the total number of robberies while on federal supervised release to eleven. Over the course of these eleven robberies, Washington led police on three high-speed chases, including one in which he rammed his truck into multiple vehicles and nearly struck police officers. His pattern of conduct consistently demonstrates little regard for the lives and safety of others.

In 2022, in Case No. 3:20-CR-00332 SI, the Court sentenced Washington to a term of 24 months in custody—significantly below the guidelines range of 57-71 months. Then, as he does again now, Washington cited his undeniably difficult upbringing to justify a downward variance, and ultimately, the Court provided him an opportunity to prove that he could live a law-abiding life once released from custody and under the close supervision of the federal probation department. This case represents what he did with the opportunity afforded to him by the Court. Washington has proven over the past several decades that he is unwilling or unable to reform, and that once released from prison, he will very likely continue to put others' lives in danger if it serves his personal gain.

For the reasons set forth below, the government requests that the Court sentence Washington to **189 months in prison**, which represents nine months below the middle of the guidelines range, to be followed by three years of supervised release.

## BACKGROUND

### A. Offense Conduct and Related Robberies

From August 2023 to February 2024, Washington committed eleven armed robberies of East Bay businesses, and was ultimately indicted for eight of them. During this time, he led police on three high-speed chases to evade capture, before ultimately being arrested on February 13, 2024, in possession

of the distinct lavender-colored semiautomatic pistol he had used in the eight robberies for which he has pleaded guilty and is now being sentenced.

1. <u>January 14, 2024: Armed Robbery at Valero Gas Station in Hayward (Count One)</u>

On the morning of January 14, 2024, Washington entered a Valero gas station snack shop in Hayward. *See* Presentence Investigation Report (PSR) ¶ 7. Washington racked the pistol's slide (which returned to its original forward position, indicating the pistol was loaded with ammunition), walked behind the counter, and struck the store clerk in the back of the head with an open hand. *Id.* The store clerk removed cash from the register and gave it to Washington. *Id.* Washington then demanded money from the safe located behind the counter. *Id.* The store clerk placed the cash inside a plastic bag and handed it to Washington, who then fled the store. *Id.*

2. <u>January 19, 2024: Armed Robbery at Valero Gas Station in San Leandro (Count Two)</u>

On the morning of January 19, 2024, Washington entered the snack shop of a Valero gas station in San Leandro. PSR ¶ 8. Washington removed a pistol from his bag and racked the pistol's slide, which returned to its original forward position, indicating the pistol was loaded with ammunition. *Id.*

Washington pointed the pistol at the store clerk, who, having been the victim of prior robberies, immediately recognized that a robbery was occurring and opened the store's cash register. PSR ¶ 9. Washington took cash from the register and approximately 80 packs of cigarettes before fleeing. *Id.*

3. <u>January 22, 2024: Armed Robbery at Valero Gas Station in Hayward (Count Three)</u>

On the morning of January 22, 2024, Washington entered the Food Shop at another Valero gas station in Hayward. PSR ¶ 10. Washington approached the cash register and pointed a pistol at the store clerk and demanded cash from the register and cigarettes. *Id.* Out of fear, the clerk gave Washington over $300 in cash and over $750 worth of cigarettes. *Id.* Washington then ordered the store clerk to give him her iPhone, which she did. *Id.* Washington then walked over to a store customer, pointed the pistol at her, and stated, "Give me everything you got." PSR ¶ 11. Washington then took the customer's gold chain, four silver rings, wallet, and iPhone. *Id.*

4. <u>January 27, 2024: Armed Robbery at Quik Stop Gas Station in Fremont (Count Four)</u>

On the night of January 27, 2024, Washington entered a Quik Stop gas station's snack shop in Fremont, armed with a pistol. PSR ¶ 12. Washington racked the pistol's slide, which returned to its

original forward position, indicating the pistol was loaded with ammunition. *Id.* Washington told the store clerk to open the cash registers and repeatedly told the store clerk he would kill him. *Id.* Washington walked behind the counter and took the store clerk's wallet out of his pocket. *Id.* Out of fear, the clerk opened both cash registers, and Washington took cash from both. *Id.* Washington also took cigarettes and bottles of Hennessy liquor, which he loaded into his backpack. *Id.* Washington then took the store clerk's iPhone. *Id.*

5. <u>January 31, 2024: Armed Robbery at Exxon Gas Station in Livermore (Count Five)</u>

On the morning of January 31, 2024, Washington entered a Grab & Go Food Mart at an Exxon gas station in Livermore. PSR ¶ 13. Washington walked around the counter, pointed a pistol at the store clerk, and demanded he open the safe. *Id.* The store clerk told Washington he did not have the key, and Washington demanded the clerk open the cash register. *Id.* Washington then searched the clerk's jacket and pants pockets, taking cash from the clerk's pocket. *Id.*

Several times, Washington shoved the clerk, who fell back against the counter. PSR ¶ 14. Washington grabbed two plastic bags from the counter and filled them with cigarette boxes, and then grabbed the clerk's tote bag and filled it with more cigarette boxes. *Id.* Washington also stole the clerk's cell phone and some t-shirts from the store. *Id.*

6. <u>January 31, 2024: Armed Robbery at AM/PM in Castro Valley (Count Six)</u>

At 11:40 a.m. on January 31, 2024, Washington and a male accomplice (hereafter, "D.H.") arrived at an AM/PM store located at an Arco gas station in Castro Valley, California. PSR ¶ 15. Washington and D.H. then entered the AM/PM, where three store clerks were working. *Id.* Washington pulled out a pistol and racked the pistol's slide, which returned to its original forward position, indicating the pistol was loaded. *Id.* Washington grabbed one of the store clerks from behind and held the firearm against the clerk's body, while pushing him against the counter. *Id.* At the same time, D.H. walked behind the counter and demanded that the other clerks open the cash registers, and they complied. *Id.* ¶ 16. D.H. also took $300 from one clerk's pocket. *Id.*

Washington forced the first clerk behind the counter and told him to get on the ground. PSR ¶ 17. Washington and D.H. then stole $1,500 from the two cash registers and about ten cartons of cigarettes. *Id.* Washington and D.H. then returned to their vehicle and fled. *Id.*

7. February 1, 2024: Armed Robbery at Doubletime Gas Station in Hayward (Count Seven)

On the morning of February 1, 2024, Washington entered a Doubletime gas station's snack shop in Hayward. PSR ¶ 20. Washington waved a pistol at the store clerk and demanded that she give him the money from the cash register and that she open the safe. *Id.* He also led the victim, at gunpoint, to a back room. *Id.* The victim told him she could not open the safe, but she opened the cash register and handed over the cash tray, from which Washington took approximately $200. *Id.* He then filled a black garbage bag with 186 packs of cigarettes. *Id.* Before Washington left the store, he ordered the clerk, at gunpoint, to go to the back room and not to come out. *Id.* ¶ 19. The clerk complied out of fear and did not leave the room until she heard Washington leave the store. *Id.*

8. February 1, 2024 High-Speed Chase

On February 1, 2024, investigators located the U-Haul truck Washington had used in the January 27 robbery in Fremont and January 31 robbery in Livermore in the parking lot of the Oaks Card Club in Emeryville. *Id.* They observed Washington sitting at one of the card tables in the club. *Id.* Investigators contacted the Emeryville Police Department to assist with the arrest of Washington. PSR ¶ 21. Officers attempted to detain Washington as he exited the card club and entered his vehicle, but Washington rammed the U-Haul truck into the two patrol cars, nearly striking an officer. *Id.* He also hit five parked civilian cars, hopped a median, and ran over a fence to escape capture. *Id.*

9. February 2, 2024: Armed Robbery at Taco Bell in Hayward (Count 8)

On the morning of February 2, 2024, Washington and D.H. arrived at a Taco Bell restaurant located in Hayward and entered the restaurant, where two employees were setting up for the day. PSR ¶ 22. Washington approached one employee and pressed a pistol against her back. *Id.* Washington ordered her to go to the back of the restaurant, and she complied, fearing for her safety. *Id.* While forcing the first employee to the back, Washington pointed the gun at the second employee and ordered her to the back as well. *Id.*

After forcing both employees into the rear office, Washington asked, "Where's the safe?" He ordered the employees to "disconnect everything" and to remove all the money from the safe. PSR ¶ 23. One of the employees informed Washington that the safe was in the front area of the store. *Id.* Washington told D.H. to force the employee to the front to open the safe, and D.H. walked the employee

to the safe, where she input her passcode to unlock the safe. *Id.* The accomplice placed the cash ($1,050 in mixed U.S. currency, including rolls of coins) into a bag. *Id.*

Washington remained in the office with the other employee and asked for her cell phone and wallet, but she informed him they were locked up. PSR ¶ 24. He then ordered her to take all valuables out of her backpack, while placing the pistol against her back. *Id.* Washington then walked the employee out of the office at gunpoint to where the other employee was taking money out of the safe. *Id.* Washington then forced both employees back into the office and fled with D.H. in their vehicle. *Id.*

10. <u>February 2-3, 2024 High-Speed Chase</u>

Shortly before midnight on February 2, 2024, an officer with the Hayward Police Department identified the vehicle used by Washington and D.H. used in the January 31, 2024 robbery in Castro Valley, and the February 2, 2024 robbery in Hayward. PSR ¶ 25. The vehicle was parked outside of a rap studio, and videos from Instagram indicated that Washington and his accomplice were inside the studio at the time. *Id.*

The officer observed Washington and D.H. enter the vehicle (with Washington in the driver's seat) and begin to travel southbound. PSR ¶ 26. The officer turned on his lights and sirens and approached the vehicle. *Id.* The vehicle then fled at a high rate of speed, leading the officer (and other Hayward Police Department units who responded to the scene) on a chase, eventually entering the I-92 freeway and reaching speeds of 130 miles per hour. *Id.* The officers eventually lost sight of the vehicle and ended the pursuit. *Id.*

11. <u>February 13, 2024 Arrest of Washington and Seizure of Firearm (Count Ten)</u>

On the morning of February 13, 2024, the United States Marshals Service Fugitive Apprehension Team arrested Washington at the apartment he shared with his mother. PSR ¶ 27. Washington attempted to flee by climbing to the apartment building's roof and using ropes attached to the rooftop to descend the exterior wall. *Id.* He was ultimately apprehended. *Id.*

Investigators executed the search warrant inside the residence and located a loaded, semiautomatic Glock model 19 pistol bearing serial number AFHM918. PSR ¶ 28. The pistol matched the surveillance footage of the pistol used in all of the armed robberies. *Id.*

Officers also located multiple identification cards and credit cards in the names of other people in a backpack at Washington's residence. PSR ¶ 29. On his Instagram, on January 11, 2024, Washington posted a video reel which showed his face, and then showed a table covered in checks, California identification cards, California driver's licenses, bank cards, and Social Security cards in the names of other people. *Id.* The video also showed the Glock pistol used in the robberies. *Id.*

12. Uncharged Conduct: Three Armed Robberies from August 2023 and High-Speed Chase

On the morning of August 12, 2023, two suspects armed with pistols robbed a gas station in Hayward, taking money from the cash register. PSR ¶ 106. One suspect, believed to be the defendant, punched the clerk in the head and pressed the pistol against the clerk's back. *Id.* As this suspect fled the store, he lunged at the clerk as if he were going to shoot the clerk. *Id.* The suspects arrived and departed in a black Volkswagen Tiguan SUV. *Id.*

On August 26, 2023, at 2:30 p.m., a suspect entered another gas station in Hayward and robbed the clerk at gunpoint. PSR ¶ 106. The suspect struck the clerk in the face multiple times with the firearm as the clerk reached to give the suspect the cash from the register. *Id.* The suspect also demanded cigarettes and struck the clerk three more times in the back of the head. *Id.* The suspect then fled in a Volkswagen Tiguan. *Id.*

Later, on August 26, 2023, at 6:09 p.m., another armed robbery occurred at a gas station in Hayward, in which Washington is suspected of being the getaway driver but is not suspected of entering the store. PSR ¶ 106. The robbery suspects entered the store and took money and cigarettes before fleeing in the Volkswagen Tiguan. *Id.* On August 26, 2023, at 8:53 p.m., an officer with the San Francisco Police Department observed the Tiguan outside of the Tenderloin police station and discovered it was reported stolen. *Id.* Officers attempted to pursue the vehicle, but the driver began fleeing at a high rate of speed, and a vehicle pursuit occurred on the San Francisco Bay Bridge. *Id.* Officers ultimately lost the vehicle, but it was located at an apartment complex in Oakland. *Id.* Washington's fingerprints were located in the vehicle, and location data for a phone associated with him

established that the phone was in the area of both robberies at the time they occurred. *Id.*

**B. Procedural History**

On August 15, 2024, a ten-count Indictment was filed in the Northern District of California, charging Washington with violations of 18 U.S.C. § 1951(a) – Robbery Affecting Interstate Commerce (Counts One through Eight); 18 U.S.C. § 924(c)(1) – Using, Carrying, or Possessing a Firearm in Connection with a Crime of Violence (Count Nine); and 18 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm (Count Ten). On December 19, 2025, the defendant pleaded guilty to Counts One through Eight and Ten of the Indictment.

## DISCUSSION

**A. Legal Standard**

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include (among other factors):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B. Sentencing Guidelines Calculation**

Although the government ultimately reaches the same total offense level (30) and guidelines calculation as the PSR (168-210 months), the government objects to the exclusion of a two-level enhancement pursuant to USSG § 2B3.1(b)(4)(B) in the groups pertaining to Counts Five, Seven, and

Eight. Consistent with the Plea Agreement, the government also objects to the inclusion of a two-level enhancement for reckless endangerment during flight pursuant to USSG §3C1.2.

USSG § 2B3.1(b)(4)(B) provides for a two-level increase "if any person's freedom of movement was restricted through physical contact or confinement, such as by being tied, bound, or locked up, to facilitate commission of the offense or to facilitate escape." Ninth Circuit case law has repeatedly made clear, however, that these examples are "illustrative and not exclusive." *See*, *e.g.*, *United States v. Parker*, 241 F.3d 1114, 1118 (9th Cir. 2001). The Ninth Circuit has also held that, "When a dangerous weapon is used to force a person to move about, that person has been physically restrained just as surely as if he was grabbed by the collar and pulled along." *United States v. Thompson*, 109 F.3d 639, 641 (9th Cir. 1997). And even after the 2025 revision to this section, courts have found that "forcing a person into a back room at gunpoint… constitutes physical restraint within the meaning of § 2B3.1(b)(4)(B). *United States v. Hasberry*, No. 25-2287, 2026 U.S. App. LEXIS 18640, at *7 (7th Cir. June 24, 2026).

In this case, the victims' movement was not merely restricted; rather, they were moved at gunpoint. In Count Five, the January 31 robbery at AM/PM, Washington grabbed one of the store clerks from behind and held the firearm against the clerk's body, while pushing him against the counter. He then forced a clerk behind the counter and told him to get on the ground. In Count Seven, the February 1 robbery at Doubletime, Washington led the clerk at gunpoint to a back room, and then again forced her into the backroom to facilitate his escape. In Count Eight, the February 2 robbery at Taco Bell, Washington forced the employees at gunpoint to a backroom both during the robbery and then to facilitate his and D.H.'s escape. This conduct is sufficient for the two-level increase.

The government agrees with the PSR that Washington's Criminal History Category is VI, leading to a sentencing guidelines range of 168-210 months in custody. PSR at ¶ 136.

### C. The Government Recommends 189 Months of Imprisonment Based on the 18 U.S.C. § 3553(a) Factors

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a **custodial sentence of 189 months**, which represents the middle of the guidelines range as calculated by the government and the PSR, to be followed by a three-year term of supervised release. Consistent with 18 U.S.C. § 3553(a), such a

sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offenses, to provide just punishment and protect the community, and to account for both the aggravating and mitigating factors present in this case.

Despite multiple prior sentences, despite the supervision of federal probation, and despite the opportunity provided by this Court imposing a sentence far below his guidelines range on his last conviction, Washington committed a series of robberies with a loaded semiautomatic pistol, knowing he would likely land in prison and showing no regard for the lives of other members of the community. He thought only of himself.

Even taken in isolation, the robberies Washington committed were serious and dangerous and merit a lengthy custodial sentence. Washington used a loaded semiautomatic firearm, which frequently had a round in the chamber and was ready to be fired with a pull of the trigger as he aimed it at or held it against the body of his victims. He did untold harm to the employees of these businesses, and to the businesses themselves. But the conduct around the robberies is also alarming. Washington led police on multiple high-speed chases, during which he put even more lives in danger. And knowing that the police were trying to arrest him was not enough to convince him to stop committing robberies. Even after he fled from police by ramming into multiple vehicles at the Oaks Card Club on February 1, 2024, Washington and D.H. robbed a Taco Bell at gunpoint the following morning.

Further, it is relevant that the Sentencing Guidelines essentially treat Washington as though he had committed only six robberies. Under the units analysis of USSG § 3D1.4, five levels are added for more than five units. Washington has pleaded guilty to committing eight armed robberies—and there is strong evidence that he in fact committed eleven armed robberies in this six-month period—but the guidelines effectively stop counting after six robberies. That they do not account for the fact that he committed more robberies and caused even greater harm weighs in favor of a sentence toward the higher end of the guidelines range.

In reaching its recommendation, the government has considered not only these serious aggravating factors, but also the mitigating factors present in this case. The government acknowledges the challenges of Washington's upbringing, which are detailed in the PSR. But the government also recognizes that this mitigation has been accounted for in past sentences, and Washington has failed to

avail himself of the assistance of federal probation while on supervised release. Instead, he chose to commit the crimes at issue in this case.

A custodial sentence of 189 months—the middle of the applicable guidelines range—is sufficient, but not greater than necessary, taking into account the factors set forth in 18 U.S.C. § 3553(a). As described above, Washington's crimes were serious, they put people's lives at risk, and they occurred in the context of an unrelenting history of criminal conduct. A sentence of 189 months would also serve the general and specific deterrence goals of § 3553 by signaling both to Washington and to potential offenders that armed robbery of businesses will result in meaningful punishment.

## CONCLUSION

For the foregoing reasons, with full consideration of the Sentencing Guidelines, the goals of sentencing, and the factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court sentence Defendant Jaray Washington to a sentence of **189 months of imprisonment**, to be followed by three years of supervised release. The government does not object to a concurrent sentence on Washington's supervised release violation.

DATED: October 23, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
JONAH P. ROSS
Assistant United States Attorney